**Tasfa Wolde WALLACE, Appellee,**

v.

**Janet RENO, et al., Appellants.**

**Carlos Alberto Lemos, Petitioner, Appellant,**

v.

**Immigration and Naturalization Service, Respondent, Appellee.**

Nos. 98–2317, 99–1596.

United States Court of Appeals, First Circuit.

Heard Sept. 17, 1999.

Decided Oct. 26, 1999.

---

Edward J. Duffy, Office of Immigration Litigation, Department of Justice, with whom David W. Ogden, Acting Assistant Attorney General, Civil Division, and Christopher C. Fuller, Senior Litigation Counsel, were on brief for appellants Janet Reno, et al.

Christopher J. Meade and Frederic A. Marzilli for petitioner Carlos Alberto Lemos.

Randy Olen for appellee Tasfa Wolde Wallace.

David M. McConnell, Assistant Director, Civil Division, Department of Justice, with whom David W. Ogden, Acting Assistant Attorney General, Laura A. Smith, Civil Division, Department of Justice, and Frank J. Crowley, Special Assistant United States Attorney, Immigration and Naturalization Service, were on brief for respondent Immigration and Naturalization Service.

Before BOUDIN, Circuit Judge,
COFFIN and CAMPBELL, Senior Circuit Judges.

BOUDIN, Circuit Judge.

This pair of cases is the next installment in a series presenting legal questions of reviewability and retroactivity under newly enacted immigration statutes. The issues

are legal ones, which we review *de novo*, and arise out of the following facts.

In No. 99–1596, the appellant is Carlos Lemos, a native of Portugal who entered the United States as an immigrant on December 18, 1974. In June 1995, Lemos was convicted in Rhode Island state court of unlawfully delivering cocaine. As a result, the Immigration and Naturalization Service ("INS") began deportation proceedings against Lemos on August 16, 1995. Under the Immigration and Nationality Act ("INA"), an alien is deportable if convicted of an aggravated felony or any controlled substance violation (other than possession of less than 30 grams of marijuana for personal use).[1]

Lemos conceded deportability on September 24, 1996, and sought a waiver of deportation under section 212(c) of the INA as it existed before April 24, 1996, as codified at 8 U.S.C. § 1182(c) (1994).[2] This provision, although explicitly directed at certain excludable aliens not yet admitted, had been read to give the Attorney General discretionary authority to waive deportation for aliens already within the United States who were deportable for having committed aggravated felonies or controlled substance violations, *see Francis v. INS*, 532 F.2d 268 (2d Cir.1976); *see also Almon v. Reno*, 192 F.3d 28, 29 (1st Cir.1999). Congress thereafter precluded waiver for aggravated felons who had served five years in jail. *See* Immigration Act of 1990 ("IMMACT"), Pub.L. No. 101–649, § 511(a), 104 Stat. 4978, 5052.

After Lemos's deportation proceeding had begun but before it was completed, Congress enacted two new statutes amending the INA: these amendments,

commonly reduced to the acronyms AEDPA and IIRIRA, were enacted on April 24, 1996 and September 30, 1996, respectively.[3] Pertinently, the amendments were designed to limit, even beyond IMMACT, the Attorney General's authority to waive deportation for certain felons; and, by complementary jurisdictional changes, Congress sought to curtail judicial review, especially for this same class of felons.

Substantively, AEDPA enlarged the existing statutory ban on discretionary waivers of deportation. Under the newly revised INA section 212(c), waivers could not be granted to an alien convicted of a drug offense (minor marijuana convictions aside) regardless of the amount of jail time served. *See* AEDPA § 440(d). As for IIRIRA, it contained further changes to the waiver rules but we ignore those changes here because IIRIRA explicitly provided that only its "transitional rules," and not the new waiver and other permanent provisions, applied to proceedings, like Lemos's, commenced before April 1, 1997. *See* IIRIRA § 309(c).

The other set of changes that concern us involve judicial review. Under the old INA, deportation orders were reviewable directly in the courts of appeals, *see* 8 U.S.C. § 1105a(a) (1994), but the statute provided that a deportee in custody could also resort to habeas corpus, *see* 8 U.S.C. § 1105a(a)(10) (1994). AEDPA repealed this explicit habeas provision, *see* AEDPA § 401(e), and replaced it with a specific prohibition on "review by any court" of "any final order" deporting an alien "by reason of" the commission of specified

---

**1.** Section 241(a)(2)(A)(iii), (B)(i), then codified at 8 U.S.C. § 1251(a)(2)(A)(iii), (B)(i) (1994), later renumbered as INA § 237, 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i) (Supp. II 1996).

**2.** The "waiver" provision has since been revised, the concept renamed and the statutory location altered but these changes do not affect this case. The new provision is INA § 240A, 8 U.S.C. § 1229b (Supp. II 1996).

**3.** Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (codified as amended in scattered sections of 8, 15, 18, 19, 21, 22, 28, 40, 42, 49, 50 U.S.C.); Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, Div. C., 110 Stat. 3009–546 (codified as amended in scattered sections of 5, 7, 8, 18, 20, 22, 28, 32, 42, 50 U.S.C.).

criminal offenses, including that of which Lemos was convicted. AEDPA § 440(a).[4]

On April 29, 1997, the immigration judge found that AEDPA's expansion of the category of persons not eligible for waivers barred Lemos from such relief and ordered him deported. On this ground, the Board of Immigration Appeals ("BIA") dismissed his appeal. In the meantime, this court had held that the AEDPA ban on "review by any court" of final orders of deportation against those in Lemos's "by reason of" category became effective immediately upon enactment of AEDPA and applied to pending deportation proceedings, thus preventing a direct appeal to the court of appeals in such cases. *Kolster v. INS*, 101 F.3d 785, 790 (1st Cir.1996).

On February 12, 1999, Lemos petitioned for habeas corpus in the district court pursuant to 28 U.S.C. § 2241. He asserted that AEDPA's new limitation on waivers was erroneously being applied retroactively as to him.[5] The district court (Judge Keeton) dismissed the habeas petition for lack of jurisdiction, finding that a contrary position taken by this court affirming habeas jurisdiction in *Goncalves v. Reno*, 144 F.3d 110, 123 (1st Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999), had been undermined by *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). Lemos now appeals to us.

In No. 98–2317, the appellee is Tasfa Wallace, a native of Jamaica, who entered this country as an immigrant on May 10, 1988. In February 1996, Wallace was convicted in Rhode Island state court after pleading guilty to possessing marijuana with intent to deliver. Based on that conviction, the INS served Wallace on March 20, 1996, with an order to show cause charging him with deportability. The show cause order was filed with the Office of the Immigration Judge on June 14, 1996.

On December 18, 1996, Wallace conceded deportability and indicated his intention to apply for a discretionary waiver of deportation under section 212(c) of the old INA. The hearing was continued until August 1997. As with Lemos, the immigration judge in a resumed hearing on August 18, 1997 found Wallace ineligible for waiver because section 440(d) of AEDPA had enlarged the category of persons for whom waivers were prohibited to include drug offense felons like Wallace. The BIA dismissed Wallace's appeal on May 5, 1998, on the same basis.

Wallace then filed a habeas petition in the district court, claiming that it was impermissibly retroactive to apply AEDPA's new limitation on waivers to him. On October 7, 1998, the district court (Judge Gertner) granted the petition, agreeing with Wallace that the limitation could not be applied to him because AEDPA had not yet been enacted when he pleaded guilty in his underlying criminal case. *Wallace v. Reno*, 24 F.Supp.2d 104 (D.Mass.1998). Acting prior to *American–Arab*, the district court premised its habeas authority on our *Goncalves* decision. The government now appeals from this decision.

■ At the threshold of both appeals is the question whether habeas is available to those who, like Lemos and Wallace, are

---

**4.** Because a final order of deportation was entered against Lemos after October 30, 1996, he was also subject to a ban adopted by IIRIRA's transitional rules that prohibits "appeals" by those in the same "by reason of" category. *See* IIRIRA § 309(c)(4)(G).

**5.** This claim is a statutory one; the *ex post facto* clause does not apply to deportation. *See Galvan v. Press*, 347 U.S. 522, 530–31, 74 S.Ct. 737, 98 L.Ed. 911 (1954); *United States v. Bodre*, 948 F.2d 28, 31–32 (1st Cir.1991),

*cert. denied*, 503 U.S. 941, 112 S.Ct. 1487, 117 L.Ed.2d 628 (1992). Lemos also challenged the AEDPA limitation on waiver on the constitutional grounds that it violated equal protection principles to apply the limitation to deportable but not to excludable aliens; and Wallace made a similar claim. Another panel of this court has recently rejected this attack, *Almon*, 192 F.3d at 29, so it is not further discussed.

subject to IIRIRA's transitional rules (because proceedings to deport them began prior to April 1, 1997). The transitional rules treat such persons as subject to the INA as modified by AEDPA, but—with a couple of qualifications—not as further modified by IIRIRA. Under this transitional rules regime, the provisions already cited preclude "review" and "appeal" of a final deportation order by persons deportable "by reason of" drug felonies. The government argues that *American–Arab* has undermined *Goncalves*'s ruling that district courts still have authority to consider habeas petitions in transitional rule cases.

In *Goncalves*, this court held that AEDPA's repeal of the INA provision recognizing habeas as a remedy for aliens in custody was not an affirmative ban on habeas jurisdiction. *Goncalves*, 144 F.3d at 121. The court declined to treat the AEDPA repeal as qualifying the general authority of courts to grant habeas petitions for persons held in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241 (1994). *Goncalves* said that repeals of habeas by implication are not favored and that without habeas, AEDPA and IIRIRA's statutory bans on review or appeal would otherwise preclude any court from considering statutory challenges brought by a person deportable "by reason of" a covered offense. *Goncalves*, 144 F.3d at 122.

When a panel of this circuit has decided an issue, another panel will ordinarily not revisit that issue; but, of course, this limitation does not apply where an intervening decision of the Supreme Court overturns or undermines our earlier decision. *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 592 (1st Cir.), *cert. denied*, 516 U.S. 807, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995). Thus, the government is free to attack *Goncalves* based on *American–Arab* even though the Supreme Court denied *certiorari* in *Goncalves* in March 1999, only a few days after it decided *American–Arab*. But *American–Arab* was concerned with a

different issue, and the government's effort to use *American–Arab* by analogy is farfetched.

In *American–Arab*, a group of aliens brought an action against the Attorney General seeking to enjoin deportation proceedings against them; they claimed that they were being targeted for deportation because of their political views. *American–Arab*, 525 U.S. at ——, 119 S.Ct. at 936. IIRIRA was passed while their case was on appeal, and the Attorney General argued that the injunction sought was prohibited by an IIRIRA provision, effective at once, *see* IIRIRA § 306(c)(1), that limited judicial intervention for aliens regardless of when their deportation proceedings began. That provision, new INA § 242(g) (added by IIRIRA § 306(a) and codified at 8 U.S.C. § 1252(g) (Supp. II 1996)) provides:

> Except as provided in this section [providing for court of appeals review of final orders] and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Although this provision might appear to channel judicial intervention in all deportation matters to the court of appeals, the Supreme Court concluded that section 242(g) governed only three specific decisions by the Attorney General, namely, to commence proceedings, adjudicate cases, and execute removal orders, *American–Arab*, 525 U.S. at ——, 119 S.Ct. at 943. The Court found that the injunctive action brought by the aliens in *American–Arab* was a direct challenge to the Attorney General's decision to "commence proceedings" and was thus barred by section 242(g). *Id.* at ——, 119 S.Ct. at 945. The limited scope of section 242(g), and its aim to protect against premature review of "discretionary determinations," were spe-

cifically stressed. *Id.* at ———, 119 S.Ct. at 943–44.

*American–Arab* thus strengthens *Goncalves* in one pertinent respect: by narrowly construing section 242(g), it makes that provision even less useful to the government as a basis for restricting the use of habeas to challenge statutory interpretations adopted in final deportation orders for which direct review is not available. Other circuits have agreed that such final orders, including determinations that waivers are barred by statute, are not decisions "to · commence proceedings, adjudicate cases, or execute removal orders." *See Jurado–Gutierrez v. Greene,* 190 F.3d 1135, 1144 (10th Cir.1999); *Mayers v. INS,* 175 F.3d 1289, 1297 (11th Cir.1999).

In a substantive attack on *Goncalves* allegedly supported by *American–Arab,* the government says that section 2241 is not a general grant of authority to exercise habeas corpus jurisdiction wherever a person is held "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c); rather, the government argues that this quoted language is simply a *limitation* on habeas and that there is no affirmative authority to grant habeas in immigration cases, both because Congress specifically repealed the grant (which existed in the old INA) and because Congress intended to curtail habeas in favor of very limited direct review (as confirmed by new INA section 242).

The reference in section 2241(c) to "the Constitution or laws or treaties" is literally a limitation on habeas corpus ("the writ of habeas corpus shall not extend to a prisoner unless …"). But a prior subsection provides that writs of habeas corpus may be granted by "the district courts … within their respective jurisdictions," 28 U.S.C. § 2241(a), and section 2241 as a whole has long been taken as a general grant of authority to issue habeas writs for persons held in violation of the Constitution or laws, unless such jurisdiction has been limited or withdrawn by Congress. *See, e.g., Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Norris v. Georgia,* 522 F.2d 1006, 1010–11 (4th Cir.1975). This is implicit in *Goncalves,* among other cases, and nothing in *American–Arab* is to the contrary.

Thus, the government's better argument is that section 2241 is a general grant of jurisdiction to issue habeas petitions *but* that the new immigration statutes, read together, should be treated as an implied prohibition on habeas as to deportations in general because Congress meant to preclude any judicial intervention where a person is deportable "by reason of" specified offenses and, with respect to other deportees, meant to channel judicial review into narrowly circumscribed proceedings in the courts of appeals subject to specific time limits triggered by entry of the final order.

This is by no means a silly argument, although it is neither compelled by *American–Arab* nor consistent with *Goncalves.* In *LaGuerre v. Reno,* 164 F.3d 1035, 1039–40 (7th Cir.1998), *petition for cert. filed,* 68 U.S.L.W. 3154 (U.S. Sept. 7, 1999) (No. 99–418), Chief Judge Posner has more or less agreed with the channeling argument. But reluctant, like most judges, to find that Congress has deprived a "by reason of" deportee of *any* opportunity to raise a constitutional issue in court, his opinion proposes to permit direct review for such challenges where necessary to avoid a miscarriage of justice. *Id.* at 1040. This in turn reflects a narrow concession by the government apparently designed to ward off a constitutional attack on restricted review.

Concentrating all judicial scrutiny of deportation in the courts of appeals is certainly the general direction in which Congress has been moving. But *LaGuerre*'s solution is at odds with the explicit statutory bar on any direct review contained in AEDPA § 440(a), *see also* IIRIRA § 309(c)(4)(G), and it leaves no forum at all for review of statutory claims advanced by

anyone deportable "by reason of" a covered conviction. *LaGuerre* is also an approach at odds with that of at least seven other circuits which—before and after *American–Arab*—have held that habeas remains available in transitional rules cases despite the AEDPA amendments or those of IIRIRA that apply in transition cases.[6]

We thus conclude that nothing in *American–Arab* directly precludes deportees governed by the IIRIRA transitional rules from challenging their final deportation orders through habeas where they have no other way to assert in court that their deportation is contrary to the Constitution or laws of the United States. This may not be an efficient mechanism, and it is likely the result of too many congressional amendments not clearly coordinated with one another. However, until Congress revamps the judicial review provisions once again, or the Supreme Court provides further guidance, *Goncalves* stands, and habeas jurisdiction is available to both Lemos and Wallace.

■ There is one loose end. The government says that even as narrowed in *American–Arab*, section 242(g) does apply to Wallace, although not to Lemos, because Wallace sought not only his release but also a stay of deportation. This latter request, says the government, is a direct interference with the Attorney General's authority to execute removal orders. Of course, the stay issue is arguably moot, since the district court has granted the writ. But the government says that a cryptic passage in *American–Arab*, 525 U.S. at ——, 119 S.Ct. at 945, makes the whole "case" subject to section 242(g) because it included a request for a stay.

We need not pursue these issues because, where the district court has authority to grant habeas writs, we are unwilling to read section 242(g) as depriving the court of authority to issue traditional ancillary relief needed to protect its authority to issue the writ. *Cf. Pierre v. United States,* 525 F.2d 933, 936 (5th Cir.1976); *Saini v. INS,* 64 F.Supp.2d 923, 925 (D.Ariz.1999). To maintain habeas in the face of section 242(g), but deny the ancillary relief needed to make it meaningful, would be to strain at the gnat after swallowing the camel. The Supreme Court's surprisingly narrow reading of section 242(g), *compare Goncalves,* 144 F.3d at 122, certainly does not encourage us to enlarge the reach of that section.

■ The much harder question in this case is whether the ban on waivers, as that ban was enlarged by AEDPA § 440(d), should be applied to those who, like Wallace and Lemos, were already in deportation proceedings prior to the enactment of AEDPA but had not yet sought a section 212(c) waiver. We did not face or decide this issue in *Goncalves,* which itself involved a pending waiver application, but at least three other circuits have found that the new enlarged ban should not be applied in deportation proceedings underway at the time that AEDPA became law.[7] (The Seventh Circuit has reached the opposite conclusion. *See LaGuerre,* 164 F.3d at 1040–41.)

One difficulty for us is that these three other circuits rested in part on the premise that Congress did not want the enlarged ban to apply in pending proceedings. However, there is no express language in section 440(d) either forbidding or requir-

6. The Second, Third, Fifth, Sixth, Eighth, Tenth and Eleventh Circuits have so held. *See Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *DeSousa v. Reno,* 190 F.3d 175, 180 (3d Cir.1999); *Requena–Rodriguez v. Pasquarell,* 190 F.3d 299, 304 (5th Cir.1999); *Pak v. Reno,* 196 F.3d 666, 673 (6th Cir.1999); *Shah v. Reno,* 184 F.3d 719, 724 (8th Cir.1999); *Jurado–Gutierrez v. Greene,* 190 F.3d 1135, 1145 (10th Cir.1999); *Mayers v. INS,* 175 F.3d 1289, 1301 (11th Cir.1999).

7. *See Mayers,* 175 F.3d at 1302–04; *Sandoval v. Reno,* 166 F.3d 225, 240–42 (3d Cir.1999); *Henderson,* 157 F.3d at 129–30; *see also Shah,* 184 F.3d at 724.

ing immediate application of the enlarged ban in pending proceedings. These other circuits stressed the fact that Congress considered a proposal to mandate immediate application but did not enact it; but at least in the present context, *compare Lindh v. Murphy*, 521 U.S. 320, 326–30, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), we think this is a pretty thin basis for inferring that it intended the opposite.

After all, elsewhere in the new statute Congress gave detailed directions *both ways* as to immediate or deferred application of new provisions; in some cases it ordered immediate application, *see, e.g.*, AEDPA §§ 413(g), 421(b), in others only prospective application, *see, e.g.*, AEDPA §§ 435(b), 440(e-f), 441(b). Yet in the enlarged ban of waivers it gave no direction either way. Quite possibly the members of Congress could not agree; and in such situations, Congress has in the past sometimes left retroactivity matters to the courts. *See, e.g.*, *Landgraf v. USI Film Products*, 511 U.S. 244, 261, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). We think it did so here and regard *Goncalves* as consistent with this determination. *See Goncalves*, 144 F.3d at 128–31 (relying on the lack of express Congressional direction).

■ The Supreme Court has given some guidance for cases like this one where Congress has not said whether a statute applies to pending matters or prior transactions. In a nutshell, courts ordinarily are to presume against "retroactive" (as opposed to "prospective") application of new civil statutes that make substantive legal changes (as opposed to jurisdictional or procedural ones). *See Landgraf*, 511 U.S. at 270, 280, 114 S.Ct. 1483; *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). But these terms are hardly self-executing, and the Supreme Court itself has recognized that its classifications might not resolve all cases. *See Martin v. Hadix*, —— U.S. ——, ——, 119 S.Ct. 1998, 2006, 144 L.Ed.2d 347 (1999); *Lindh*, 521 U.S. at 327–28, 117 S.Ct. 2059; *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483.

The present case is unusual: Wallace and Lemos were deportable for their crimes long before AEDPA, whose effect was simply to limit the Attorney General in exercising her preexisting discretion to waive deportation. *Accord Jurado–Gutierrez*, 190 F.3d at 1141. To this extent, the amendment might seem not to impair any existing substantive right belonging to Wallace and Lemos. On the other hand, the change could certainly have a direct, and in some measure predictable, impact on their interest in avoiding deportation.

One can debate endlessly whether this kind of change invades a substantive right of the aliens or "increase[s] a party's liability for past conduct," or "attaches new legal consequences" to a past act. *Landgraf*, 511 U.S. at 270, 280, 114 S.Ct. 1483; *see also Hughes Aircraft Co.*, 520 U.S. at 948, 117 S.Ct. 1871. The circuits have disagreed about how these terms should be applied to the enlarged ban, *compare Mayers*, 175 F.3d at 1303, *with Requena–Rodriguez*, 190 F.3d 299 (5th Cir.1999); and we ourselves have viewed the issue differently, albeit in two different contexts. *Compare Goncalves*, 144 F.3d at 128, *with Kolster*, 101 F.3d at 789. Such disagreements are a warning against relying too much on general labels in deciding unusual cases.

The concerns that drive the presumptions and labels in retroactivity cases are multiple. The new law may be more or less urgent and delay in applying it may or may not undermine Congress's broader purpose. Concerns about fair warning, reasonable expectations, and justified reliance vary in force depending on the nature of the change or even the circumstances of the individual case. *Cf. Martin*, —— U.S. at ——, 119 S.Ct. at 2006; *Lindh*, 521 U.S. at 327–28, 117 S.Ct. 2059. Even prudential matters—such as clarity and ease of administration—may be of consequence, especially where the new rule involves the operation of a judicial or administrative

proceeding. And, there may be various places to draw the line.

Against this background, we think that there are good reasons, absent a contrary direction from Congress, to apply the pre-AEDPA scope of waiver to deportation proceedings already in progress at the time of AEDPA's enactment. However they are characterized, the waiver rules—once proceedings have begun—become a common focus of expectation and even reliance. The alien's choice of strategy in that proceeding may well be affected by the chances of waiver, so one should be cautious about changing the rules after the game has begun.

Congress no doubt was keenly interested in speeding drug felons out of the country; but it itself considered whether or not to apply the enlarged ban to "pending cases," thus recognizing a *possible* cut off point that involves only a limited and easily administrable deferral of the new and more stringent regime. *Goncalves* concerned a pending application, not a pending case, but applications are made within pending cases and it might seem odd to draw the line between these categories. Finally, consistency favors a result that is thus far uniform among the circuits, *see* note 7, above, except the Seventh Circuit.

■ We have assumed thus far that both Wallace and Lemos were in deportation proceedings before April 24, 1996, the date of AEDPA's enactment. To the contrary, the government has argued that Wallace was not in deportation proceedings until after AEDPA's enactment because, although the INS issued an *order to show cause* to Wallace in March 1996, before AEDPA's enactment, that order to show cause was not filed with the Office of the Immigration Judge until June 14, 1996, after AEDPA became law. The government points to INS regulations that provide that a deportation proceeding is not "commenced" until the order to show

cause is filed with the immigration court. *See* 8 C.F.R. § 3.14(a) (1999).

In this case we are not concerned with INS's internal time tables, starting points, due dates, and the like but with the judicial question of retroactivity. This question turns on considerations unrelated to the purpose of INS regulations—primarily (in the absence of statutory guidance) with the evil Congress sought to prevent and the realities of reasonable reliance or settled expectations on the part of litigants. From *this* standpoint, we think that when an order to show cause is served on the alien, the deportation process has effectively begun and expectations properly form, even if there is no actual reliance.[8]

Our decision leaves open the question whether and when AEDPA § 440(d)'s new ban on waivers applies to cases in which the alien pled guilty to the crime before AEDPA's enactment date but a deportation proceeding had not yet begun. In *Wallace,* the district court took the view that wherever an alien pled guilty prior to AEDPA, the alien *might* have relied on the availability of a waiver, and so the broadened AEDPA waiver ban should never apply in such a case. *Wallace,* 24 F.Supp.2d at 111–12. In another variation, the Seventh Circuit said that it would not apply AEDPA's enlarged waiver ban if a deportee showed both that he would not have conceded deportability without the prospect of a waiver and that he had some colorable basis for contesting deportability. *Turkhan v. Perryman,* 188 F.3d 814, 827 (7th Cir.1999).

It is unnecessary to decide such matters here since both Lemos and Wallace were in deportation proceedings prior to AEDPA. By the time the "guilty plea" case or any other variation has to be decided, we may have further insight from other circuits, new guidance from the Supreme Court, or even (given the track record in

8. *Accord McKenzie v. Reno,* No. 97–11285–DPW, at 4 n. 3 (D.Mass. Dec. 10, 1998); *Mercado–Amador v. Reno,* 47 F.Supp.2d 1219, 1224 (D.Or.1999); *Canela v. U.S. Dep't of Justice,* 64 F.Supp.2d 456 (E.D.Pa.1999).

recent years) yet another statute from Congress. Finally, our decision here applies only to cases governed by IIRIRA's transitional rules; the permanent IIRIRA regime could affect various of the issues discussed, and we leave those cases for another day.

The judgment in *Wallace* is *affirmed,* although on a ground different than that adopted by the district court; and the judgment in *Lemos* is *vacated* and the matter *remanded* for further proceedings consistent with this decision.

*It is so ordered.*