Julio Nelson **REVERDES**, Petitioner,

v.

Janet **RENO**, Attorney General, Dorris Meissner, Commissioner of the Immigration and Naturalization Service, ·Immigration & Naturalization Service, Department of Justice, and Steven Farquaharson, District Director, Respondents.

No. Civ. 98–11884–REK.

United States District Court,
D. Massachusetts.

April 26, 2000.

Randy Olen, Providence, RI, for Julio N. Reverdes, petitioner.

Christopher C. Fuller, Alison Marie Igoe, United States Department of Justice, Office of Immigration Litigation, Washington, DC, Frank W. Hunger, Office of Immigration and Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for Janet Reno, Attorney General, respondent.

## Opinion

KEETON, District Judge.

### I. Procedural Background and Nature of This Case

By Memorandum and Order (Docket No. 9, June 7, 1999), this court denied without prejudice Respondent's Motion to Dismiss for Failure to State a Claim (Docket No. 2, filed November 16, 1998). That motion asserted lack of jurisdiction to consider petitioner's due process challenge to an affirmance by the BIA of an Immigration Judge's order finding him deportable for being convicted of certain enumerated offenses and ineligible for a discretionary waiver under § 212(c) of the INA.

At the status conference of January 6, 2000, the court noted the following elements of the procedural background of this case.

Petitioner Reverdes is a native and citizen of Cape Verde.

Reverdes entered the United States as an immigrant on January 15, 1981.

On September 14, 1995, he was convicted on a guilty plea in Providence Superior Court, Providence, Rhode Island, of the manufacture and delivery of cocaine.

On August 6, 1996, the INS issued an Order to Show Cause, initiating deportation proceedings against Reverdes, charging him with deportability under INA § 241(a)(2)(A)(iii) for his conviction of an aggravated felony and under § 241(a)(2)(B)(i) for drug trafficking.

On September 30, 1996, at petitioner's deportation hearing, during which an Immigration Judge (IJ) found Reverdes deportable, Reverdes requested a § 212(c) discretionary waiver of deportation. The IJ denied his request and ordered Reverdes deported to Cape Verde.

Reverdes appealed the IJ's decision to the Board of Immigration Appeals (BIA).

On August 31, 1998, the BIA dismissed Reverdes' appeal, ruling that AEDPA § 440(d) as amending the INA made Reverdes statutorily ineligible for a discretionary waiver under § 212(c).

On September 14, 1998, Reverdes filed this petition for writ of habeas corpus. In accordance with usual practice, the Clerk of this court treated the petitioner as commencing a civil action, designated as Civil Action No. 98–11884–REK (Docket No. 1).

Respondents, in their Motion to Dismiss for Failure to State a Claim (Docket No. 2, filed November 16, 1998), contend that since petitioner did not file his application for discretionary relief under § 212(c) until after the enactment of AEDPA—the 1996 amendments to the INA that significantly narrowed the categories of convicted aliens who are eligible for a § 212(c) discretionary waiver of deportation—AEDPA applies to the BIA's affirmance of the IJ's

deportation order and makes Reverdes ineligible for § 212(c) relief. If AEDPA is so construed, then without such relief, in order to prevent his deportation, Reverdes must convince this court that the retroactive application of AEDPA to deportable aliens in circumstances analogous to his violates the United States Constitution. This, respondents contend, Reverdes has failed to do.

## II. Legal Background of Statutes and Precedents

A preliminary issue presented in this case derives from the INS' contention that, in the circumstances of this case, Reverdes is ineligible for discretionary relief because he did not request a § 212(c) discretionary waiver of his deportability until after AEDPA was enacted. Thus, respondents contend, the BIA was correct in affirming the IJ's denial of Reverdes' request for a waiver of deportation under § 212(c).

In fact, the INS did not initiate deportation proceedings against the petitioner until August 6, 1996, three and a half months after AEDPA was enacted. At the time of Reverdes' guilty plea and conviction, however, a discretionary waiver was available to permanent resident aliens like Reverdes with seven consecutive years of "lawful unrelinquished domicile" in the United States. See pre–1996 INA § 212(c) codified at 8 U.S.C. § 1182(c). See also AEDPA § 440(d) (restricting the availability of § 212(c) relief by expanding the category of criminal convictions that would render an alien ineligible for § 212(c) relief).

The question presented, then, is whether AEDPA is lawfully applied retroactively to a petitioner, like Reverdes, who was not placed in deportation proceedings until after § 212(c) relief was revoked, but who pled guilty to a deportable offense at a time when § 212(c) relief remained available for a legal alien like himself. This question may appear to be similar to the one recently before this court in *Ramos–Flores v. INS*, 99–12246–REK (D.Mass, December 28, 1999), in which the petitioner had appealed to the BIA and was ask-

ing this court to review a final removal order the basis of which was the BIA's determination of inapplicability of discretionary relief under INA § 212(c) as of 1996.

In *Ramos–Flores*, however, when the petitioner pled guilty in 1995 to a crime for which he was deportable, he was not eligible for a discretionary waiver; he was disqualified because of merely three years of residency in the United States. I concluded in that case that because the petitioner could not have relied reasonably on the availability of a discretionary waiver at the time he pled guilty, he could not prevail on the merits of the claim that the retroactive application of AEDPA's § 440(d) making the § 212(c) discretionary waiver inapplicable to convicted aliens like himself was unconstitutional.

The circumstances of the instant case, brought by petitioner Reverdes, present a set of facts significantly more favorable to a challenge to the constitutionality of a retroactive application of ineligibility for a discretionary waiver under § 212(c).

In *Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998) *cert. denied* 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999), the Court of Appeals for the First Circuit held that § 440(d) of AEDPA is not to be applied retroactively to aliens convicted of deportable offenses whose applications for discretionary relief from deportation under § 212(c) were pending at the time of the enactment of AEDPA. *Goncalves* differs from the present case in the following ways: (1) the INS initiated deportation proceedings against Goncalves before the enactment of AEDPA; and (2) Goncalves had an application for discretionary waiver pending at the time of AEDPA's enactment. In contrast, when AEDPA was enacted in April of 1996, the INS had not yet initiated proceedings against Reverdes. The INS did not issue an Order to Show Cause until August 6, 1996. Less than two months later, Reverdes was in his deportation hearing at which point he requested

discretionary relief. On behalf of Reverdes, it may be argued that *Goncalves* governs only in cases in which deportation proceedings had started and an application for discretionary relief under § 212(c) was pending. As to commencement of deportation proceedings, see *Ranglin v. Reno*, 27 F.Supp.2d 262 (D.Mass.1998).

In *Wallace v. Reno*, 194 F.3d 279 (1st Cir.1999), the Court of Appeals for the First Circuit considered the question "whether the ban on waivers, as that ban was enlarged by AEDPA § 440(d), should be applied to those who ... were already in deportation proceedings prior to the enactment of AEDPA but had not yet sought a section 212(c) waiver." *Id.* at 285. The Court of Appeals considered that question in view of the "unusual" circumstances presented by the case of the two petitioners before them, Wallace and Lemos: "Wallace and Lemos were deportable for the crimes long before AEDPA, whose effect was simply to limit the Attorney General in exercising her preexisting discretion to waive deportation. To this extent, the amendment might seem not to impair any existing substantive right belonging to Wallace and Lemos. On the other hand, the change could certainly have a direct, and in some measure predictable, impact on their interest in avoiding deportation." *Id.* at 286.

These "unusual" circumstances are more cogently analogous to those presented by petitioner Reverdes. Even more troubling, however, is the question left unresolved by *Wallace*, and that is

> whether and when AEDPA § 440(d)'s new ban on waivers applies to cases in which the alien pled guilty to the crime before AEDPA's enactment date but a deportation proceeding had not yet begun. In *Wallace*, the district court took the view that wherever an alien pled guilty prior to AEDPA, the alien might have relied on the availability of a waiver, and so the broadened AEDPA waiver ban should never apply in such a case. In another variation, the Seventh

Circuit said that it would not apply AEDPA's enlarged waiver ban if a deportee showed both that he would not have conceded deportability without the prospect of a waiver and that he had some colorable basis for contesting deportability.

> It is unnecessary to decide such matters here since both Lemos and Wallace were in deportation proceedings prior to AEDPA. By the time the "guilty plea" case or any other variation has to be decided, we may have further insight from other circuits, new guidance from the Supreme Court, or even (given the track record in recent years) yet another statute from Congress.

*Id.* at 287–88 (citations omitted).

I note here that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and its ban on discretionary waivers under § 212(c) appears not to apply to Reverdes because the IJ's decision was issued on September 30, 1996, the day IIRIRA was enacted. Neither the transitional rules nor the permanent rules of IIRIRA apply. Thus, we do not have the same jurisdictional muddle regarding the interaction of 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) that existed in *Ramos–Flores*. *See Ramos–Flores v. INS*, 99–12246–REK (D.Mass, December 28, 1999). Reverdes' petition is within the jurisdiction of this court and *Goncalves* and *Wallace* remain on point.

But, a question remains. IIRIRA, according to the Supreme Court in *American–Arab*, made clear that the Attorney General's decision to "*commence* proceedings" (emphasis added) is a discretionary decision that is not reviewable by this court. *See Reno v. American–Arab*, 525 U.S. 471, 119 S.Ct. 936, 942–44, 142 L.Ed.2d 940 (1999). Is the Attorney General's decision to *delay the commencement* of removal proceedings until after the petitioner is ineligible for a discretionary waiver of deportation, a waiver for which he was eligible when he pled guilty to a deportable offense, (1) a violation of peti-

tioner's 14th amendment rights and (2) contrary to the presumption against retroactivity made clear by the Supreme Court's decision in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)? I address these issues below.

### III. Petitioner's Fourteenth Amendment Argument

■ One argument that may be made by a person in the position of the petitioner here, that delaying commencement is a violation of the 14th amendment, proceeds as follows:

Consider the case of two aliens convicted of deportable offenses on the exact same day in 1995. Both plead guilty in reliance on the availability of a discretionary waiver.

The Attorney General causes the commencement of deportation proceedings against one alien immediately, and that alien is ordered to show cause immediately. That alien applies for a discretionary waiver and waits for the result.

The Attorney General delays commencement of proceedings against a second alien, and this second alien is not ordered to show cause until after the passage of AEDPA and IIRIRA, when the discretionary waiver is no longer available. The second alien requests relief from the retroactive application of this declared ineligibility for waiver under § 212(c) but is denied relief.

The two aliens are in similar situations but for the trigger event of the Attorney General's decision to commence removal proceedings, an event that is beyond the control of each. For one alien, proceedings are commenced immediately and discretionary relief is available. For the other, proceedings are delayed until much later, when the law bearing on the availability of relief from deportation has been toughened. Is it a violation of the 14th amendment to treat the two aliens so differently?

The answer may be influenced by what the Supreme Court said about the "legitimate purpose" for distinguishing among convicted aliens in *American–Arab.* The Court held that the enactment of IIRIRA (albeit occurring after Reverdes' conviction and coincidentally on the day of his deportation hearing) made clear that the decision to commence removal proceedings is a decision left to the discretion of the Attorney General. For that reason, federal courts, after IIRIRA, no longer have the authority to overturn these discretionary decisions. They are to be viewed as decisions "by the Attorney General in the exercise of her prosecutorial functions." *Hernandez v. Reno,* 63 F.Supp.2d. 99, 101 (D.Mass.1999) citing *American–Arab,* 119 S.Ct. at 944 n. 9. For the reasons stated clearly in *American–Arab,* I conclude that the Attorney General's decision to commence deportation proceedings against Reverdes, however tardy and inexpedient, is not vulnerable to a 14th amendment challenge. This conclusion, however, does not preclude Reverdes from prevailing under an alternative theory discussed below.

### IV. The Presumption Against Retroactivity As Applied to A Guilty Plea

■ Petitioner contends that the 1996 amendments to AEDPA that stripped legal aliens like himself of the availability of § 212(c) relief should not apply to him. He argues that this kind of change in the law (a ban on the availability of discretionary waivers), when applied retroactively, deprives him of his due process rights and is contrary to the Supreme Court jurisprudence made clear by *Landgraf* and its progeny. The Court of Appeals for the First Circuit has had the chance to address this issue, but only briefly, by asking the following question: is this kind of change in the law one that "invades a substantive right of the aliens or increases a party's liability for past conduct, attaches new legal consequences to a past act?" *Wallace,* 194 F.3d at 286, citing *Landgraf,* 511 U.S. at 270, 280, 114 S.Ct. 1483. In

raising the issue, the Court of Appeals for the First Circuit in *Wallace* called attention to the fact that it has

> viewed the issue differently, albeit in two different contexts. *Compare Goncalves,* 144 F.3d at 128, *with Kolster [v. INS],* 101 F.3d [785] 789 [ (1st Cir. 1996) ]. Such disagreements are a warning against relying too much on general labels in deciding unusual cases.

*Id.* The First Circuit explicitly left "for another day" deciding whether a discretionary waiver is a substantive right that is subject to a due process analysis. *Id.* at 288. The day for that decision has arrived with the case now before this court, and I conclude that the retroactive application of AEDPA § 440(d) to Reverdes' circumstances cannot survive a due process challenge.

I read *Goncalves* as saying that the "Attorney General's application of the new AEDPA restrictions takes away a form of relief that . . . is plainly substantive, and so implicates *Landgraf*'s presumption against retroactivity." *Goncalves,* 144 F.3d at 128. *See also id.* at 126–132 (concluding, after a lengthy retroactivity analysis, that Congress did not intend for AEDPA § 440(d) to apply retroactively to pending deportation cases). In a footnote in *Goncalves,* the Court of Appeals distinguishes its holding in *Kolster,* remarking that

> [i]n *Kolster,* this court applied *Landgraf* principles and found no retroactivity problems in applying AEDPA § 440(a), which precluded judicial review in the courts of appeals for aliens who are deportable for having committed aggravated felonies, immediately. The question *Goncalves* raises concerning AEDPA § 440(d) is fundamentally distinct. *Kolster* concerned a purely jurisdictional statute. *Landgraf* makes clear that the application of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case.

*Id.* at 128 n. 21. The First Circuit thus distinguished *Kolster* from the present situation in which the question is not where to contest the Attorney General's decision, a jurisdictional matter, but instead whether the denial of § 212(c) relief "attaches a new disability, in respect to transactions or considerations already past." *Landgraf,* 511 U.S. at 269, 114 S.Ct. 1483. Additional support for distinguishing *Kolster* from the present case is that in *Kolster* the First Circuit concluded that

> as to his guilty plea, we have no reason to think it was induced by reliance on discretionary relief under section 212(c). By Kolster's own calculations, his "lawful domicile" for section 212(c) purposes only dates back to September 11, 1988. Thus, even under the interpretation of section 212(c) that he urges, as of September 2, 1992, the date of his guilty plea, Kolster had only accrued four years of lawful domicile. He was, as a result, three years away from being eligible for section 212(c) relief, rendering it highly unlikely that his guilty plea was predicated on the availability of such relief.

*Kolster,* 101 F.3d at 789. Thus, the court in *Kolster* implied that, at the time he pled guilty, had petitioner Kolster demonstrated reliance on the availability of a § 212(c) waiver and had he in fact been eligible for such relief, the *Landgraf* analysis might have been differently applied to the circumstances of his case. (By way of contrast, I note that in a recent case decided by the Court of Appeals for the First Circuit, *United States v. Gonzalez,* 202 F.3d 20, 24–25 (2000), the court held that a defendant was not entitled to withdraw his guilty plea on the ground that the plea was not knowing, intelligent or voluntary because of the ineffective assistance of counsel in failing to advise defendant of the plea's immigration consequences. The case before me now is legally and factually distinct from that circumstance described in *Gonzalez* in that Reverdes argues not that he did not know that he could be deported based on his guilty plea, but that

he reasonably relied on the sound advice that he had a better than likely chance of *not* being deported *despite* his guilty plea.)

My reading of *Goncalves* and *Kolster* relies on an understanding of *Landgraf* and other recent Supreme Court precedent that states that an inquiry into whether a statue operates retroactively requires a "common sense, functional judgment" about "whether the new provision attaches new legal consequences to events completed before its enactment." *See Martin v. Hadix*, 527 U.S. 343, 119 S.Ct. 1998, 2006, 144 L.Ed.2d 347 (1999) (quoting *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483). Respondent goes to great length to try to persuade me that the denial of the availability of § 212(c) relief to petitioner Reverdes does not violate his rights to due process. In light of the First Circuit's decision in *Goncalves* (and its distinguishing the result in *Goncalves* from that in *Kolster*) and the continuing viability and strength of the principles forged in *Landgraf* and later in *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), I remain unpersuaded by the respondent's arguments.

In the present case, Reverdes has alleged, through counsel at the hearing before me, that he did in fact rely on the availability of a § 212(c) waiver when he pled guilty to the crime that rendered him deportable. This makes sense given the circumstances of his case: (1) he served minimal jail time for his narcotics offenses, his only criminal conviction; (2) he avoided the anxiety and uncertainty of a trial; (3) he avoided the likelihood of a longer jail sentence should he be found guilty; (4) Reverdes was eligible for a § 212(c) waiver of deportation having been a lawful permanent resident of the United States since 1981, when he was twelve years old; and (5) although the transcript of the plea colloquy is not in the record before me, given Rhode Island law, see, *e.g.*, Rhode Island Gen. Laws, 1956, § 12–12–22, the sentencing judge likely advised Reverdes of the immigration consequences of his plea at which point (or at an earlier date) Reverdes was assured by his attorney, as is regular practice, that a guilty plea does not necessarily result in deportation. *See, e.g., Wallace v. Reno*, 24 F.Supp.2d 104, 110–111 (D.Mass.1998), *aff'd*, 194 F.3d 279 (1st Cir.1999); *Mojica v. Reno*, 970 F.Supp. 130, 177 (E.D.N.Y.1997), *aff'd in part, dismissed in part, Henderson v. INS*, 157 F.3d 106 (2d Cir.1998). The common and proper advice to Reverdes would have been that a guilty plea rendered Reverdes deportable, but that § 212(c) waivers were available to convicted aliens like himself and that possibly as much as a majority of them were granted as a matter of course by the INS. *See Goncalves*, 144 F.3d at 128; *Mojica*, 970 F.Supp. at 178 (citing U.S. Dept of Justice EOIR Statistical Sheet 1, Jan. 19, 1995). *See also* Sultan, *Immigration Consequences*, 30–JUN Ariz. Att'y at 31 (stating that criminal practice guides instruct criminal defense attorneys that § 212(c) waivers are "probably the most common form of relief available [to aliens who are rendered deportable by criminal convictions], and also certainly the easiest to obtain").

Thus, I conclude that denying Reverdes the opportunity to apply for such a waiver now is a denial of a constitutionally protected right. In addition to the explanation above, I base this conclusion on the following factors:

(1) Reverdes' stated reliance on the availability of a § 212(c) waiver at the time of his guilty plea;

(2) the reasonableness of Reverdes' reliance, in view of Rhode Island State Law, attorney practice, and the likelihood of § 212(c) waivers being granted pre–1996;

(3) the unsettling of Reverdes' legitimate expectation of the availability of a § 212(c) waiver by attaching "a new disability, in respect to transactions or considerations already past," *i.e.*, his guilty plea, in violation of the Constitutional presumption against retroactivity in *Landgraf*, 511 U.S. at 269, 114 S.Ct. 1483.

In addition, I note that, in general, requiring a finding of reliance in the case of guilty pleas such as this one is a functional and administratively feasible approach to the wide-sweeping effects of the 1996 amendments to the INA.

Remaining for decision is where and by whom a finding of reliance can be made. Under its general habeas jurisdiction, a federal district court has the authority and the competence, associated with serving as the federal trial court, to decide this issue after factual proffers and a hearing. One may argue, however, that a more appropriate and expedient forum is the Immigration Court, where, at the time of a § 212(c) hearing, the Immigration Judge can make a determination of reliance. A denial of the alien's request by the Immigration Court and the BIA might then be appealed at once to a federal-court forum competent to consider, on judicial review, all issues that arise from the conviction and the order of deportation.

### Conclusion

In 1995, Reverdes pled guilty to a drug offense for which he was rendered deportable. On April 24, 1996, the enactment of AEDPA made Reverdes ineligible for a discretionary waiver of deportation under § 212(c). On August 6, 1996, the INS issued an Order to Show Case, initiating deportation proceedings against Reverdes. On September 30, 1996, the Immigration Judge found Reverdes deportable and denied his request for a discretionary waiver. The BIA dismissed Reverdes' appeal of the Immigration Judge's decision, ruling that AEDPA's enactment made Reverdes statutorily ineligible for a discretionary waiver under § 212(c). Because I have concluded that retroactive application of AEDPA's § 440(d) to make Reverdes ineligible for a discretionary waiver "attaches a new disability, in respect to transactions or considerations already past," and offends principles of "fair notice and respect for reasonable reliance and settled expectations," *Landgraf,* 511 U.S. at 269–70, 114 S.Ct. 1483, I conclude that Reverdes' due process rights were violated and that the Immigration Judge and the BIA erred in not considering Reverdes' application for a discretionary waiver of deportation. For these reasons, I will remand this case to the Immigration Court to determine the merits of Reverdes' application for a § 212(c) waiver of deportation.

### ORDER

For the foregoing reasons, it is ordered:

This case is remanded to the Immigration Court to determine the merits of Reverdes' application for a § 212(c) waiver of deportation.