John Brian ATTWOOD, Petitioner,

v.

Janet RENO et al., Respondents.

No. CIV. A. 00–10414–JLT.

United States District Court,
D. Massachusetts.

June 16, 2000.

---

Robert D. Watt, Jr., Providence, RI, for John Brian Attwood, Plaintiffs.

Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, for Janet Reno, Doris Meissner, Steve Farquaharson, Department of Justice, Immigration and Naturalization Service, Defendants.

## MEMORANDUM

TAURO, District Judge.

Petitioner brings this habeas corpus petition challenging the Immigration Judge's finding that his application for a waiver of deportation, under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1994), is banned. He seeks a stay of deportation, supervisory release, and a section 212(c) hearing before an Immigration Judge.

### I.

Petitioner is a native and citizen of Canada, who has resided in the United States as a lawful permanent resident since January 16, 1963. In 1995, Petitioner was convicted in Massachusetts state court of trafficking in cocaine, for which he was sentenced to five to seven years incarceration. As a result of his conviction, on April 18, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause against Petitioner, charging him with deportability under sections 241(a)(2)(A)(iii) and (B)(i) of the INA. 8 U.S.C. § 1251(a)(2)(A)(iii), (B)(i) (1994).[1]

During deportation proceedings, Petitioner conceded deportability and sought a

waiver of deportation under section 212(c) of the INA as it existed before April 24, 1996. 8 U.S.C. § 1182(c) (1994). Section 212(c) had been read to grant the Attorney General discretionary authority to waive deportation for aliens already within the United States who, like Petitioner, were deportable for having committed an aggravated felony or controlled substance violation. *See Almon v. Reno,* 192 F.3d 28, 29 (1st Cir.1999). On April 24, 1996, however, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[2] section 440(d) of which prohibited the Attorney General from granting a waiver of deportation to an alien convicted of a non-minor drug offense. 110 Stat. 1214.

The INS had *issued* its Order to Show Cause against Petitioner on April 18, 1996, prior to the passage of AEDPA. But Petitioner was not *served* with the Order until June 6, 1996. In July 1997, an Immigration Judge found Petitioner deportable, pretermitted his section 212(c) application, and ordered him deported to Canada. The Judge determined that, because Petitioner was an alien convicted of trafficking in cocaine, section 440(d) of AEDPA precluded section 212(c) relief.

### II.

Relying on this sequence of events, Petitioner maintains that section 440(d)'s ban on waivers was applied impermissibly in his deportation proceedings. He points out that the INS, prior to AEDPA's enactment, already had *issued* an Order to Show Cause against him. The import of this circumstance, he argues, is that his proceedings already had begun before AEDPA became law. To apply section 440(d) to him, he contends, would be to do so retroactively.

---

1. Under the INA, an alien is deportable if convicted of an aggravated felony or any controlled substance violation (other than possession of less than thirty grams of marijuana for personal use). *See* 8 U.S.C. § 1251(a)(2)(A)(iii), (B)(i) (1994).

2. Pub.L. No. 104–132, 110 Stat. 1214 (codified as amended in scattered sections of 8, 15, 18, 19, 21, 22, 28, 40, 42, 49, 50 U.S.C.).

The First Circuit and other courts have restricted the retroactive application of section 440(d). In *Goncalves v. Reno*, the First Circuit held section 440(d) inapplicable in deportation proceedings brought against aliens whose section 212(c) applications were pending when AEDPA became law. 144 F.3d 110, 133 (1st Cir.1998). In *Wallace v. Reno*, the court proscribed application of section 440(d) to aliens whose proceedings already were underway when Congress enacted AEDPA. 194 F.3d 279, 285 (1st Cir.1999). And, in *Mattis v. Reno*, the court found that section 440(d) would not preclude an alien from seeking section 212(c) relief if the alien could demonstrate to the INS that, prior to AEDPA's enactment, he or she "actually relied on the availability of section 212(c) relief in entering a guilty plea or not contesting a criminal charge." 212 F.3d 31, 33 (1st Cir.2000).

In *Wallace*, the First Circuit considered whether section 440(d) should preclude section 212(c) application to an alien who had been *served* an Order to Show Cause prior to AEDPA's enactment. 194 F.3d at 287. Refusing to follow INS regulations, which provide that deportation proceedings do not "commence" until the order is filed with the immigration court, *see id.* (citing 8 C.F.R. § 3.14(a) (1999)), the court determined that, "when an order to show cause is served on the alien, the deportation process has effectively begun and expectations properly form, even if there is no actual reliance." *Id.*

The government contends that *Wallace* forecloses any argument that deportation proceedings have begun any earlier than when the INS serves the criminal alien with an Order to Show Cause. This court disagrees. The narrow question before the court in *Wallace* was whether proceedings were underway against an alien whom the INS had *served* with an Order to Show Cause. *See id.* Petitioner seeks to widen the window, arguing that deportation proceedings have commenced against an alien when the INS *issues* its order, even though the ministerial act of *service* has not been completed.

Resolution of this question depends, not on the "INS's internal time tables, starting points, due dates, and the like," *Wallace*, 194 F.3d at 287, but on consideration of "the evil Congress sought to prevent and the *realities of reasonable reliance or settled expectations* on the part of litigants." *Id.* (emphasis added). Given that perspective, this court concludes that Petitioner's deportation proceedings had begun when the INS *issued* its Order to Show Cause on April 18, 1996, six days before AEDPA became law.

Practical analysis of the statute compels this conclusion. The INS, not the alien, controls whether and when to issue an Order to Show Cause. Any reasonable reliance or settled expectations on the part of the INS, therefore, are not disturbed by today's ruling. To be sure, *service* of the Order upon the alien provides him with actual notice of the governmental procedures being taken against him. But, it is the *issuance* of the Order that constitutes the significant first, decisive, public step. It is the *issuance* that triggers the alien's reasonable reliance and expectation that he will have to answer to the deportation process that has been initiated.

### III.

For the foregoing reasons, the court concludes that Petitioner should have been entitled at his deportation proceedings to seek a waiver of deportation with the Attorney General under section 212(c) of the INA as it existed prior to April 24, 1996. Petitioner's petition for habeas corpus accordingly is GRANTED.

AN ORDER SHALL ISSUE.