# United States Court of Appeals
## For the First Circuit

No. 00-1451

ANGELO GROCCIA,

Petitioner, Appellant,

v.

JANET RENO, ATTORNEY GENERAL, ET AL.,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Bownes, Senior Circuit Judges.

Prasant D. Desai, with whom Desai & Graves was on brief, for appellant.
Brenda M. O'Malley, Attorney, Office of Immigration Litigation, with whom David W. Ogden, Assistant Attorney General, Civil Division, and Terri J. Scadron, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for appellees.

December 18, 2000

**SELYA, Circuit Judge.**  In 1996, Congress made massive changes to the immigration laws.  See Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546; Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.  Those changes led to a flood of litigation.  The case at bar is one rivulet in that seemingly endless stream.

The background facts are virtually undisputed.  Angelo Groccia, a native of Italy, entered the United States lawfully in 1955 and became a resident of Massachusetts.  On February 1, 1996, he pled guilty in a Massachusetts state court to two counts of unlawful distribution of cocaine.  Mass. Gen. Laws ch. 94C, § 32(A).  As a result of this conviction, the Immigration and Naturalization Service (INS) served Groccia with an Order to Show Cause (OSC) on July 5, 1996.  For some unexplained reason, the INS never filed that paper with the Immigration Court.

The IIRIRA then took effect.  On August 11, 1997, the INS issued a Notice to Appear (NTA) — the functional equivalent of an OSC — addressed to Groccia.  This time, the agency filed the charging document with the Immigration Court.

-2-

On October 9, 1997, an immigration judge (IJ) convened a hearing, sustained the INS's charges, refused to consider Groccia's plea for discretionary relief, and ordered his deportation. After unsuccessfully appealing this decision to the Board of Immigration Appeals (BIA), Groccia filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts. The district court stayed deportation and agreed with Groccia that it had jurisdiction to entertain the habeas petition. Groccia v. Reno, 89 F. Supp. 2d 127, 129-32 (D. Mass. 2000). In the end, however, the court denied the petition on the merits. Id. at 132. This appeal ensued.

To understand Groccia's appellate argument, it is helpful first to rehearse certain aspects of the changes in the immigration laws to which we already have alluded. Prior to April 24, 1996, an alien convicted of a crime similar to the one that Groccia committed nonetheless could apply for a discretionary suspension of deportation under section 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(c) (repealed 1997). Effective April 24, 1996, the AEDPA enlarged the category of crimes that automatically rendered an alien ineligible for section 212(c) relief. See AEDPA § 440(d). That enlargement encompassed the crime that Groccia had committed.

Id. To make matters worse from Groccia's standpoint, Congress's enactment of the IIRIRA on September 30, 1996, abolished suspension of deportation entirely and replaced it, effective April 1, 1997, with a more restrictive procedure called cancellation of removal. IIRIRA § 304(a)(3), 8 U.S.C. § 1229b(b)(1) (1999). Groccia cannot meet either the criteria for cancellation of removal or, if AEDPA § 440(d) applies, the amended criteria for waiver of deportation.

Groccia's argument — which the district court rejected — weaves in and out of this mine field. The IIRIRA established transitional rules to govern cases commenced, but not completed, prior to its effective date. IIRIRA § 309(c). These transitional rules preserve a limited degree of access to waivers of deportation. Groccia asserts (1) that the transitional rules should govern his case because he was placed in deportation proceedings when the INS served him with the OSC on July 5, 1996, and (2) that AEDPA § 440(d) should be ignored because its retrospective application to his pre-AEDPA conviction would be unconstitutional. If these assertions are correct, section 212(c) is open to him, and both the IJ and the BIA erred in refusing to consider his plea for section 212(c) relief.

The respondents counter on two fronts. First, they suggest that we need not deal with Groccia's argument at all, inasmuch as the district court lacked jurisdiction over his habeas corpus petition. Second, they asseverate that, in all events, deportation proceedings commenced not with the service of the OSC, but with the later filing of the NTA. Since that filing did not occur until August 11, 1997, their thesis runs, the IIRIRA was in full force, section 212(c) stood repealed, and Groccia was not entitled to make a pitch for waiver of deportation. The parties' contentions present questions of law that engender de novo review. Costa v. INS, ___ F.3d ___, ___ (1st Cir. 2000) [No. 99-2357, slip op. at 5]; Wallace v. Reno, 194 F.3d 279, 280-81 (1st Cir. 1999).

We need not linger long over the respondents' jurisdictional argument. Regardless of whether a case is governed by IIRIRA's permanent rules or by its transitional rules, the district courts retain their traditional alien habeas jurisdiction under 28 U.S.C. § 2241. See Mahadeo v. Reno, 226 F.3d 3, 10 (1st Cir. 2000) (holding that district courts retain habeas jurisdiction under the IIRIRA); Wallace, 194 F.3d at 285 (holding to like effect under the transitional rules). Thus, the district court appropriately reached the merits of the petitioner's claim.

We proceed to the vexing question of whether section 212(c) relief remains a possibility for a person in Groccia's circumstances. Choice of law has decretory significance in this inquiry, inasmuch as the permanent rules purpose to eliminate section 212(c) waivers of deportation entirely. In turn, choice of law depends largely on when deportation proceedings were commenced. See IIRIRA § 309(c)(1) (providing that IIRIRA's permanent rules do not apply to "an[y] alien who is in exclusion or deportation proceedings as of [April 1, 1997]"); see also Costa, ___ F.3d at ___ [slip op. at 6-13] (discussing the issue).

In conducting this line-drawing exercise, we do not write on a pristine page. We previously have addressed the plight of criminal aliens who, like Groccia, became statutorily ineligible for waivers of deportation by reason of AEDPA § 440(d) on the basis of guilty pleas that were tendered prior to April 24, 1996 (AEDPA's effective date). We have, in effect, constructed a continuum. In Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), we decided that the full gamut of section 212(c) relief — that is, relief unconstrained by the automatic disqualifiers limned in AEDPA § 440(d) — was still available to criminal aliens who had applications for such relief pending on April 24, 1996. Id. at 133. We subsequently determined that

the same rule obtained for criminal aliens who had not applied for section 212(c) relief prior to April 24, 1996, but who were already in deportation proceedings at that time. Wallace, 194 F.3d at 285-87. In the last of three landmark cases, we held that a criminal alien whose conviction pre-dated the AEDPA, but who was not placed in deportation proceedings until after April 24, 1996, was eligible for the full gamut of section 212(c) relief only if he could demonstrate that he actually and reasonably relied on the possibility of such relief when entering his guilty plea. Mattis v. Reno, 212 F.3d 31, 33 (1st Cir. 2000). This trilogy forms the framework under which Groccia's claim must be analyzed.

Groccia pleaded guilty to cocaine distribution on February 1, 1996 — two months before the AEDPA became law. The INS served him with an OSC on July 5, 1996 — after AEDPA's effective date, but well before IIRIRA's effective date. If, as the petitioner contends, service of the OSC marked the commencement of deportation proceedings, he falls under the Mattis rubric. The case law seems to support that positioning. E.g., Alanis-Bustamante v. Reno, 201 F.3d 1303, 1307-09 (11th Cir. 2000) (holding, in analogous circumstances, that a criminal alien upon whom an OSC had been served was then and thereafter in deportation proceedings); Wallace, 194 F.3d at 287 (similar).

Since this is the outcome to which Groccia aspires, we assume, favorably to him — but do not decide — that Groccia was in deportation proceedings prior to the advent of the IIRIRA.[1] As such, all that is left is to apply Mattis to the facts of this case.

The Mattis court disclaimed any intention to resurrect section 212(c) by ignoring all criminal convictions that antedated the AEDPA. 212 F.3d at 39. The court concentrated on situations in which the alien either had admitted his guilt or, at least, had not contested the charge (as opposed to those in which the alien had been convicted after a trial). Id. at 39-40. Even then, the court regarded "[t]he universe of all aliens who entered guilty pleas before April 1996" as "too broad." Id. at 39. Hence, it narrowed the class in two ways: first, by holding that section 212(c) relief "continues to be available for deportable aliens whose requisite criminal convictions pre-

---

[1]We assume this point arguendo because the matter is not entirely settled by existing precedent. The respondents argue, based principally on 8 C.F.R. § 3.14(a), that no deportation proceedings were commenced until the INS filed the NTA with the Immigration Court on August 11, 1997; that IIRIRA's permanent rules therefore apply; and, accordingly, that any hope of a section 212(c) waiver is by the boards. Neither Mattis nor Wallace foreclose this argument because those cases involved the transitional rules and left open (as do we) the question of how criminal aliens similarly situated would fare under IIRIRA's permanent rules. Mattis, 212 F.3d at 35 n.9; Wallace, 194 F.3d at 288.

dated AEDPA, if, and only if, the alien actually and reasonably relied on the availability of 212(c) relief when he pled guilty to or did not contest the criminal charges," id. at 38; and second, by making clear that only those aliens who could prove actual reliance on the availability of section 212(c) could take advantage of the rule, id. at 39-40.

Mattis does not help Groccia. The case's holding emanated from a concern about retroactivity — a concern that an alien might have relied on the existence of section 212(c) and his presumptive eligibility for relief thereunder when he decided, pre-AEDPA, not to contest a criminal charge. Thus, reliance was the touchstone. Because Mattis himself had failed to raise any claim of reliance before the Immigration Court, the BIA, or the district court, and because the record was devoid of any evidence of reliance, we refused to remand for further proceedings. Id. at 41. Instead, we held the petitioner to the consequences of his procedural default and affirmed the dismissal of his habeas application. Id.

The same analysis carries the day here. The record is barren of any proof of reliance. That is not fortuitous: the petitioner neglected to raise the issue of reliance either during the administrative proceedings or in the district court. Even after Mattis was decided, Groccia compounded these

-9-

omissions by failing to make a proffer or to identify in this court any evidence tending to show reliance. He has not so much as adumbrated, even at this late date, a viable theory of reliance.

That ends the matter. Conventional forfeiture rules pertain in alien habeas cases. E.g., id.; Prado v. Reno, 198 F.3d 286, 292 (1st Cir. 1999); Goncalves, 144 F.3d at 125. These rules, straightforwardly applied, counsel against prolonging this litigation.

Groccia attempts to avoid this result in two ways. First, he argues that we should pay special attention to his lengthy residence in the United States, his family ties, his generally commendable deportment (apart from his drug-trafficking conviction), and kindred factors. While these equities would weigh in his favor in a merits-based consideration of his entitlement to discretionary relief from deportation under section 212(c), e.g., Gouveia v. INS, 980 F.2d 814, 816 (1st Cir. 1992), they do not bear on the preliminary question of whether he relied in any cognizable manner on the availability of such relief when he decided not to contest the criminal charges lodged against him in early 1996.

Groccia's fallback position is that we should excuse his failure to offer any proof of detrimental reliance because

our <u>Mattis</u> opinion post-dated the earlier proceedings in this case. We did not accord that type of largesse to Mattis himself, and we see no reason to do so here. As Judge Lynch noted in <u>Mattis</u>, 212 F.3d at 41, "the issue of reliance is hardly new." At least since 1994, that issue has been integral to any meaningful inquiry into the retroactive effect of a new law. See <u>Landgraf</u> v. <u>USI Film Prods.</u>, 511 U.S. 244, 270 (1994); <u>see also</u> <u>Kolster</u> v. <u>INS</u>, 101 F.3d 785, 788-89 (1st Cir. 1996) (discussing the point). <u>Mattis</u> is no more than a logical extrapolation of these decisions. The fact of the matter is that well-established case law, dating back to before the start of the administrative proceedings in this case, effectively placed Groccia on notice that if section 212(c) were available to him at all, reliance was an issue to be addressed.

We need go no further. Assuming, favorably to Groccia, that immigration proceedings commenced prior to IIRIRA's effective date, he nonetheless is ineligible for section 212(c) relief because he has not proffered even a barebones showing of actual and reasonable reliance. Consequently, we affirm the district court's dismissal of his habeas petition. The stay of deportation is vacated.

**Affirmed.**