**Artur Manuel SOUSA, Petitioner**

v.

**Janet RENO, Attorney General; Steven Farquharson, District Director of the Immigration and Naturalization Service; and any Individual Who May Have Custody of the Petitioner, Respondents**

No. 00–CV–11990–PBS.

United States District Court,
D. Massachusetts.

March 1, 2001.

William Graves, Desai & Graves, Boston, MA, for Artur Manuel Sousa, Petitioner.

Brenda M. O'Malley, Dept. of Justice, Civil Division, Washington, DC, for Steve Farquharson, Janet Reno, Attorney General, Respondents.

### OPINION AND ORDER

SARIS, District Judge.

Petitioner Artur Manuel Sousa ("Sousa"), who is an alien subject to deportation based on his prior criminal conviction, petitioned this Court for a writ of habeas

corpus pursuant to 28 U.S.C. § 2241 on the grounds that he was wrongfully denied the opportunity to apply for discretionary waiver of deportation and that he was prejudiced by the arbitrary delay in the initiation of removal proceedings against him. The Respondents, the Attorney General and District Director of the Immigration and Naturalization Service ("INS"), have moved for dismissal on jurisdictional grounds and for failure to state a claim upon which relief can be granted.

For the reasons stated below, the Respondents' motion is **DENIED** in part and **ALLOWED** in part. In addition, the petition for writ of habeas corpus is **ALLOWED,** and this matter is **REMANDED** for proceedings consistent with this opinion and order.

## BACKGROUND

Petitioner Sousa is a 31–year–old native and citizen of Portugal. At the age of 2½, he entered the United States with his parents as an immigrant in 1971. He has continuously resided in the United States since his arrival. On June 29, 1990, Sousa pleaded guilty to a charge of unarmed robbery of a person over sixty-five years old (a bag, cash, and personal items) in the Superior Court in Cambridge, Massachusetts and was given a suspended sentence of 3 to 5 years of imprisonment. In 1996, Sousa was found to be in violation of the terms of his probation because he failed to appear for a job and was ordered to serve the full term of the suspended sentence. He served about five years and two months. He had no other convictions.

On September 3, 1998, the INS began removal proceedings against Sousa, charging him with being removable because he had been convicted of an aggravated felony (the bag snatching). After the Immigration Judge ("IJ") allowed two adjournments to allow Sousa to seek counsel, Sou-sa appeared pro se on March 5, 1999. After the IJ explained to Sousa his procedural rights, Sousa admitted that he was a citizen of Portugal and that he had been convicted of unarmed robbery and sentenced to 3 to 5 years in prison. He also conceded that he was subject to removal for having committed a crime of violence for which the sentence was at least one year. The IJ found Sousa removable for having been convicted of an aggravated felony and also found him ineligible for discretionary relief from removal. In his oral decision, the sympathetic IJ noted that he lacked the jurisdiction to address Sousa's claim that he had been unconstitutionally deprived of his right to seek discretionary waiver under former INA § 212(c), 8 U.S.C. § 1182(c) (1988) (superseded).

Sousa then obtained legal counsel and appealed the removal order to the Board of Immigration Appeals ("BIA"). In his notice of appeal Sousa contended that the IJ should have allowed him to apply for a waiver of deportation under former INA § 212(c). The BIA dismissed the appeal on August 12, 1999. It rejected Sousa's claim that he should be permitted to apply for a § 212(c) waiver, noting that waiver under that section had been amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1277 (1996), and repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 (1996).

Sousa then appealed the decision of the BIA to the First Circuit Court of Appeals. *See Sousa v. INS*, 226 F.3d 28 (1st Cir. 2000). The Court of Appeals found that its jurisdiction over Sousa's appeal was limited to determining the twin jurisdictional facts of whether Sousa was 1) an alien and 2) removable for having commit-

ted an aggravated felony. *See id.* at 31. Having found these facts, the Court held that it had no jurisdiction to hear Sousa's claim that he was entitled to apply for discretionary waiver pursuant to former INA § 212(c). *See id.* at 34. In a parting passage, the Court stated: "With respect to the agency's refusal to consider granting Sousa's waiver [under former INA § 212(c) ], Sousa may seek habeas relief in the district court . . . ." *Id.* at 35.

Pursuant to that advice, Sousa filed a petition for writ of habeas corpus with this Court on September 27, 2000. In addition to claiming a right to seek discretionary waiver under former INA § 212(c) (Count I), Sousa claims that the INS impermissibly and arbitrarily delayed the initiation of removal proceedings against him in a manner that deprived him of rights he would have enjoyed prior to the passage of AEDPA and IIRIRA (Count II). The INS rejoined with this motion to dismiss the petition on both claims.

### DISCUSSION

### I. Motion to Dismiss [1]

For purposes of a motion to dismiss for failure to state a claim, the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Coyne v. City of Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992) (citing *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990)). A complaint should not be dismissed under Fed. R.Civ. P. 12(b)(6) unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (quoting

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### II. Scope of Available District Court Review

■ At the outset, the INS argues that this Court lacks jurisdiction over Sousa's petition for a writ of habeas corpus under 28 U.S.C. § 2241. It is therefore important to establish whether this Court has jurisdiction over this matter and, if jurisdiction exits, to clarify the scope of review available.

Under the current immigration laws, direct review of decisions of the BIA in the federal courts is severely limited, especially where the BIA's removal ruling is based on the alien's conviction for an aggravated felony. According to the new INA § 242, enacted as part of IIRIRA's permanent rules:

> Judicial review of all questions of law or fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

IIRIRA § 306(a); INA § 242(b)(9); 8 U.S.C. § 1252(b)(9). This "zipper clause" channels all review of removal proceedings through INA § 242, which provides for review exclusively in the court of appeals. *See* IIRIRA § 306(a)(2); INA § 242(b). Review under INA § 242 is further qualified by § 242(a)(2)(C), which reads: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]. . . ." IIRIRA

---

**1.** Actually, as the INS attached materials, this is better considered as a motion for summary judgment. However, as there are no disputed facts, the analysis is the same.

§ 306(a); INA § 242(a)(2)(C); 8 U.S.C. § 1252(a)(2)(C). Thus, under IIRIRA's permanent rules, direct review of a finding that an alien is removable because of a conviction for an aggravated felony is available only in the court of appeals and is strictly limited to determining jurisdictional facts.[2] *See Sousa,* 226 F.3d at 31 (1st Cir.2000) (reviewing BIA decision for limited purpose of determining whether petitioner is 1) an alien who is 2) removable for having committed an aggravated felony).

Notwithstanding these limitations, the First Circuit has held that the federal courts' traditional jurisdiction to entertain habeas corpus petitions under 28 U.S.C. § 2241 was not disturbed by the sweeping provisions of IIRIRA § 306(a) divesting the federal court of jurisdiction. *See Mahadeo v. Reno,* 226 F.3d 3, 8 (1st Cir.2000), *petition for cert. filed,* 69 U.S.L.W. 3418 (U.S. Dec 11, 2000) (No. 00–962). *Accord Calcano–Martinez v. INS,* 232 F.3d 328, 337–38 (2nd Cir.2000), *cert. granted,* — U.S. ——, 121 S.Ct. 849, 148 L.Ed.2d 733 (2001); *Liang v. INS,* 206 F.3d 308, 323 (3rd Cir.2000), *petition for cert. filed,* 69 U.S.L.W. 3346 (Nov. 6, 2000) (No. 00–753); *Flores–Miramontes v. INS,* 212 F.3d 1133, 1140 (9th Cir.2000). *But see Max–George v. Reno,* 205 F.3d 194, 199 (5th Cir.2000) (holding that IIRIRA § 306(a) eliminates § 2241 habeas jurisdiction for those cases that fall within its scope); *Richardson v. Reno,* 180 F.3d 1311, 1314–15 (11th Cir. 1999) (same), *cert. denied,* 529 U.S. 1036, 120 S.Ct. 1529, 146 L.Ed.2d 345 (2000). Thus, pursuant to the First Circuit's holding in *Mahadeo,* this Court has jurisdiction over all Sousa's claims falling legitimately within the scope of a habeas petition under § 2241. That is, this Court may entertain

Sousa's constitutional and statutory construction claims. *See Mahadeo,* 226 F.3d at 6 n. 6; *Goncalves v. Reno,* 144 F.3d 110, 125 (1st Cir.1998). To the extent, however, that Sousa raises claims that are neither constitutional nor involve an interpretation of a federal statute, those claims must fail as beyond the scope of the petition.

### III. Petitioner's Right to Seek § 212(c) Waiver (Count I)

█ The crux of Sousa's first claim for relief is that he was wrongfully denied the opportunity to seek discretionary waiver of deportation under the law as it stood at the time he entered his guilty plea in state court in 1990. The INS argues that the type of relief Sousa seeks has been repealed by IIRIRA and that Congress clearly evinced an intention for that repeal to apply to guilty pleas entered prior to IIRIRA's effective date.

In assessing a similar claim under the *transitional* rules of IIRIRA, the First Circuit has held that an alien whose conviction pre-dates the enactment of AEDPA and IIRIRA may still seek discretionary waiver of deportation under former INA § 212(c) upon a showing that the alien, in entering a plea of guilty or nolo contendere, actually and reasonably relied on the possibility of receiving a discretionary waiver of deportation. *See Mattis v. Reno,* 212 F.3d 31, 40 (1st Cir.2000). The First Circuit's holding under the transitional rules is substantially in accord with the holdings of several other courts of appeals. *See Jideonwo v. INS,* 224 F.3d 692, 700 (7th Cir.2000) (holding repeal of discretionary waiver under transitional rules does not apply to those who relied on existence of waiver provision in entering

---

**2.** It is undisputed that the proceedings for Sousa's removal are governed by IIRIRA's permanent rules. *See Prado v. Reno,* 198 F.3d 286, 288 n. 2 (1st Cir.1999) (permanent rules of IIRIRA apply to proceedings commenced on or after April 1, 1997).

guilty plea); *Magana–Pizano v. INS*, 200 F.3d 603, 611 (9th Cir.1999) (same). *See also Tasios v. Reno*, 204 F.3d 544, 552 (4th Cir.2000) (holding that the restriction of waiver eligibility by AEDPA § 440(d) does not apply to pre-AEDPA guilty plea); *St. Cyr*, 229 F.3d 406, 420 (2nd Cir.2000) (same), *cert. granted*, — U.S. ——, 121 S.Ct. 848, 148 L.Ed.2d 733 (2001). *But see DeSousa v. Reno*, 190 F.3d 175, 185 (3rd Cir.1999) (holding that elimination of eligibility for § 212(c) waiver applies to all pre-AEDPA convictions irrespective of alien's reliance on possibility of relief); *Requeña–Rodriguez v. Pasquarell*, 190 F.3d 299, 306 (5th Cir.1999) (same); *Jurado–Gutierrez v. Greene*, 190 F.3d 1135, 1147 (10th Cir. 1999) (same), *cert. denied*, 529 U.S. 1041, 120 S.Ct. 1539, 146 L.Ed.2d 352 (2000).

However, the holding of *Mattis* does not directly govern Sousa's petition, which arises in the context of IIRIRA's *permanent* rules. As the First Circuit recently noted, the question of whether IIRIRA's permanent rules effected a total repeal of § 212(c) remains open. *See Groccia v. Reno*, 234 F.3d 758, 761–62 n. 1 (1st Cir. 2000). Analysis of Sousa's claim will therefore depend on the application of the statutory retroactivity principles announced by Supreme Court and elaborated by the First Circuit. First, however, a brief overview of the relevant statutory landscape is helpful.

### A. Evolution of discretionary relief

Discretionary relief from deportation has been available in some form since at least 1917. *See Goncalves*, 144 F.3d at 128 (noting that the origin of discretionary relief is found in the Seventh Proviso to § 3

of the Immigration Act of 1917). Under the statutory scheme in effect at the time of Sousa's guilty plea in June 1990, most deportable aliens-including aliens deportable by reason of their criminal convictions—were afforded the right to seek discretionary waiver. *See* 8 U.S.C. § 1182(c) (1988) (superseded) (providing that a lawful permanent resident with a lawful unrelinquished domicile of seven consecutive years was eligible for a discretionary waiver of inadmissibility from the attorney general). Later that year, Congress amended § 212(c), making aliens found deportable because of an aggravated felony conviction no longer eligible to seek discretionary waiver under § 212(c) if the term of incarceration actually served for such a conviction was at least five years.[3] *See* Immigration Act of 1990, Pub.L. No. 101–649, § 511(a), 104 Stat. 4978, 5052 (1990).

Even with the limitations of the 1990 amendment, however, aliens under deportation orders were granted § 212(c) relief in a substantial number of cases, usually upon a showing that they had reformed their ways and become productive members of society. *See Goncalves*, 144 F.3d at 128. In fact, between 1989 and 1994, roughly half of all applications for § 212(c) relief were granted. *See Mojica v. Reno*, 970 F.Supp. 130, 178 (E.D.N.Y.1997).

In enacting AEDPA in 1996, Congress expanded the category of criminal convictions that would render an alien ineligible to apply for § 212(c) relief. *See* AEDPA § 440(d). Under the amended version, a discretionary waiver could not be granted to an alien convicted of certain enumerated offenses regardless of time served in pris-

---

**3.** In addition, Congress expanded the definition of aggravated felony to include more offenses and render a greater number of criminal aliens ineligible for discretionary relief. *See* Immigration Act of 1990, § 501. In 1994, Congress again expanded the definition of aggravated felony to include more classes of crimes. *See* Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416 § 222(a), 108 Stat. 4305, 4322 (1994).

on. *See id.* Soon thereafter, Congress enacted IIRIRA, which, among other things, repealed § 212(c) altogether and consolidated prior "suspension of deportation" relief and aspects of former § 212(c) relief into a new form of relief, "cancellation of removal for certain permanent residents." IIRIRA § 304(a) (codified at 8 U.S.C. § 1229b(a)).[4] That section now makes any discretionary relief unavailable to all aliens who have been "convicted of any aggravated felony." *Id.*

## B. Retroactivity

■ "[T]here is a 'presumption against retroactive legislation [that] is deeply rooted in our jurisprudence.'" *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). "The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Landgraf,* 511 U.S. at 265, 114 S.Ct. 1522 (quoting *Kaiser Alum. & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring)). Absent a clear expression of congressional intent to the contrary, a court will presume that a law will not apply to conduct that occurred prior to the law's enactment. *See Mattis,* 212 F.3d at 36; *Hughes Aircraft Co.,* 520 U.S. at 946, 117 S.Ct. 1871 ("we apply this time-honored presumption unless Congress has

clearly manifested its intent to the contrary.").

Thus, a court must first attempt to discern congressional intent. *See Mattis,* 212 F.3d at 35. If that intent is not clear, "a second-level inquiry must be made to ascertain whether applying the law to the conduct at issue would have a 'retroactive effect' ...." *Id.* (citing *Hughes Aircraft Co.,* 520 U.S. at 946, 117 S.Ct. 1871). This second inquiry demands a "common sense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *Martin v. Hadix,* 527 U.S. 343, 357–58, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (quoting *Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483).

### 1. Congressional intent

The INS argues that Congress provided specific statutory guidance in IIRIRA § 309(a) as to whether IIRIRA § 304 reaches back to bar an alien who pled guilty to a deportation-worthy crime before the effective date of IIRIRA. Section 309(a) of IIRIRA provides that the new rules added by IIRIRA §§ 301–308—including the repeal of § 212(c) relief contained in IIRIRA § 304(a)—apply to an alien covered by the rules unless that alien is currently in removal proceedings. *See* IIRIRA § 309(a) (new rules apply except to "an alien who is in exclusion or deportation proceedings as of [April 1, 1997]"). Thus, according to the INS, Congress indicated that IIRIRA's permanent rules, including § 304(a), apply in all cases, including Sousa's, that were commenced after April 1, 1997.[5]

---

**4.** In addition to these and other substantive changes, Congress changed the legal terminology associated with immigration proceedings. Previously, aliens could either be "deported" or "excluded" from the United States, depending on their status. Under IIRIRA, Congress eliminated the distinction between the two forms of proceedings and re-

placed them with "removal" proceedings. *See* IIRIRA § 304(a).

**5.** While legislative history may also be considered in applying the first prong of the retroactivity analysis, *see Goncalves,* 144 F.3d at 110, the INS has pointed to no legislative history in support of its argument that Congress spe-

Sousa, in turn, argues that the general effective date contained in IIRIRA § 309(a) does not provide the clear statement necessary to defeat the presumption against retroactivity. In support of his argument Sousa relies on the Second Circuit's recent decision in *St. Cyr*, in which that court held that congress did not clearly express an intention that IIRIRA § 304(a) effect a repeal of discretionary waiver under former INA § 212(c) for guilty pleas entered before IIRIRA's effective date. *See St. Cyr*, 229 F.3d at 414–16.

■ In determining whether IIRIRA's general effective date provision set forth in IIRIRA § 309(a) demonstrates that Congress carefully considered the retroactive repeal of former INA § 212(c), I am persuaded by the reasoning of the Second Circuit in *St. Cyr*. In *St. Cyr*, the court first noted the fact that a "statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Id.* at 414 (quoting *Landgraf*, 511 U.S. at 257, 114 S.Ct. 1483). I agree with the Second Circuit that the language in IIRIRA § 309(a) "is not precise enough to mandate retroactive application of IIRIRA § 304 under the first step of the [retroactivity] inquiry." *Id.* Given the strong presumption against retroactive legislation articulated by the Supreme Court, Congress must explain its intentions with a "heightened level of clarity" to justify the retroactive application of a law that implicates past conduct. *Id.* (citing *Lindh v. Murphy*, 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Hughes Aircraft Co.*, 520 U.S. at 946, 117 S.Ct. 1871). That is, the statutory language must "sustain only one interpretation" in order to make IIRIRA § 304

retroactive to pre-enactment guilty pleas. *Id.* Thus, a court should not infer from the "general language contained in IIRIRA § 309(a), making § 304 effective in pending proceedings, that Congress also intended the bar to discretionary relief to apply to pre-enactment guilty pleas . . . ." *Id.*

That Congress understood how to use specific, unambiguous language when it clearly intended a provision to apply to past conduct is apparent from an examination of other IIRIRA provisions. *See, e.g.*, IIRIRA § 321(c) (providing that amended definition of "aggravated felony" applies regardless of "when the conviction occurred"); IIRIRA § 322(c) (providing that new definitions of "conviction" and "term of imprisonment" shall apply "to convictions and sentences entered before, on, or after the date of the enactment of this Act"); IIRIRA § 324(c) (providing that provision governing re-entry of deported aliens applies to "departures that occurred before, on, or after the date of enactment" of IIRIRA); IIRIRA § 347(c) (providing that provision rendering an alien deportable because he or she voted in violation of the law is applicable to "voting occurring before, on, or after the date of the enactment of this Act."). Most notably, the language in IIRIRA § 321(c) and IIRIRA § 322(c) demonstrates that Congress knew how to explicitly make provisions of the statute applicable to "convictions and sentences entered before, on, or after the date of the enactment of the Act." The comparison among these various statutory provisions and the reasoning of the court in *St. Cyr* is instructive: "[b]ecause Congress made some provisions specifically applicable to prior convictions but did not do so in regard to IIRIRA § 304, it appears that Congress did not definitively decide the

cifically considered the precise issue of whether IIRIRA § 304 should be applied to

an alien who rendered a pre-enactment guilty plea.

issue of § 304's retroactive application to pre-enactment convictions." *St. Cyr*, 229 F.3d at 415.

One final, but important, consideration supports the conclusion that the general effective date of IIRIRA § 309(a) lacks the requisite clarity. That is, in construing a statute a court should avoid interpretations that raise serious constitutional questions. *See Goncalves*, 144 F.3d at 122. As the Supreme Court has stated, "[t]he Due Process Clause . . . protects the interests in fair notice and repose that may be compromised by retroactive legislation . . . ." *Landgraf*, 511 U.S. at 266, 114 S.Ct. 1483.[6] I agree with both the Second Circuit and the Seventh Circuit, which have determined that a profound due process question would arise in construing a statute to preclude the availability of § 212(c) relief in cases where an alien pled guilty or nolo contendere in reliance on the availability of § 212(c) relief. *See St. Cyr*, 229 F.3d at 416–17 n. 6; *Jideonwo*, 224 F.3d at 697 n. 7 (avoiding an interpretation that would raise the constitutional question of whether the "retroactive application of a statute [would] disturb[ ] settled expectations based on the state of the law upon which a party relied at the time an action was taken such that 'manifest injustice' would result").

To be sure, there is a circuit split on the issue. The Third Circuit has concluded that, for all aliens pleading guilty to crimes prior to the effective date of IIRIRA, relief under former INA § 212(c) is entirely foreclosed by IIRIRA § 309(a). *See Steele v. Blackman*, 236 F.3d 130, 134 (3rd Cir. 2001) (finding Congressional intent ambig-

uous, but relying on earlier circuit precedent which held that repeal of discretionary waiver under IIRIRA's transitional rules did not have an impermissible retroactive effect.) The Third Circuit's decision has less weight in this Circuit because the First Circuit has held that, in some circumstances, repeal of INA § 212(c) *does* have an impermissible retroactive effect. *See Mattis*, 212 F.3d at 40.

One other court of appeals has directly considered whether Congress clearly manifested an intent to apply IIRIRA § 309(a)'s repeal of former INA § 212(c) to guilty pleas entered before IIRIRA's effective date. In *Richards–Diaz v. Fasano*, 233 F.3d 1160 (9th Cir.2000), the Ninth Circuit disagreed with the Second Circuit and determined that, in enacting IIRIRA, Congress clearly manifested its intention that the repeal of § 212(c) would apply to convictions occurring prior to the statute's effective date. *See id.* at 1164–65. Despite its holding, however, the court acknowledged that the statute may have an impermissible retroactive effect in some circumstances by carving out the following exception to the general rule:

We leave open the possibility that, under a specific factual showing that a plea was entered in reliance on the availability of discretionary waiver under § 212(c), a petitioner may be able to establish that [IIRIRA § 304(b) ] has an impermissible retroactive application as to him. In doing so, we employ our sound instinct in applying the familiar considerations of fair notice, reasonable reliance, and settled expectations.

---

6. In particular, the Supreme Court warned of constitutional concerns arising where, in response to political pressure, Congress "may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals." *Landgraf*, 511 U.S. at 266, 114 S.Ct. 1483. *See also Pottinger v.*

*Reno*, 51 F.Supp.2d 349, 361 (E.D.N.Y.1999) (the presumption against retroactivity "reflects our enduring commitment to the protection of the unpopular and voiceless from the retributive and vindictive use of retroactive legislation.").

*Id.* at 1165 (bracketed material in original) (quoting *Magana–Pizano*, 200 F.3d at 613 (citations and quotations omitted)). The Ninth Circuit's caveat suggests that, even under the INS's statutory construction, IIRIRA's repeal of § 212(c) discretionary waiver would have an impermissible retroactive effect against those aliens who actually and reasonably relied upon the existence of the waiver provision at the time of entering their plea of guilty or nolo contendere.

### 2. Retroactive effect

Having determined from the text of IIRIRA that Congress has not clearly and unambiguously evinced its intention for the statute to apply to conduct occurring before the statute's effective date, I proceed to the second-level inquiry of whether the application of the statute to past conduct would have an impermissible "retroactive effect." *Mattis*, 212 F.3d at 37. That is, I must determine if applying the statute to Sousa would "deprive him of 'legitimate expectations and upset settled transactions.'" *Id.* (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)).

The First Circuit has already spoken directly to the question of whether the repeal of INA § 212(c) would have an impermissible retroactive effect as applied to convictions entered before a statute's effective date. In *Mattis*, the First Circuit held that the repeal of § 212(c) had an impermissible retroactive effect, but the court did not go so far as to hold that the impermissible effect reached *all* aliens whose guilty pleas were entered prior to the effective date of AEDPA § 440(d).

*See Mattis*, 212 F.3d at 39. Instead, the court held that the repeal of § 212(c) waiver had an impermissible retroactive effect only against those aliens who, prior to the effective date of the statute, entered pleas of guilty or nolo contendere in actual and is reasonable reliance on availability of § 212(c) relief.[7] *See id.* at 40. *Accord Jideonwo*, 224 F.3d at 700; *Magana–Pizano*, 200 F.3d at 612–13. *But see DeSousa*, 190 F.3d at 185 (finding no impermissible retroactive effect in applying AEDPA § 440(d) to pre-enactment convictions); *Requeña–Rodriquez*, 190 F.3d 299 at 306 (same); *Jurado–Gutierrez*, 190 F.3d at 1147 (same).

The reasoning of *Mattis* applies equally to the situation presented under IIRIRA's permanent rules. Therefore, in order to establish his eligibility to apply for INA § 212(c) relief as it stood at the time of his conviction, Sousa must demonstrate that he actually and reasonably relied—in part or in whole—on the existence of the waiver provision in entering his guilty plea in June 1990. Although the court in *Mattis* stated that "questions of whether there was actual reliance and whether it was reasonable are questions of fact to be resolved by the IJ[,]" *see id.* at 40, the court entertaining the habeas petition retains a role in determining whether the alien's claims of reliance are procedural barred or patently unreasonable. *See, e.g., id.* at 41 (affirming dismissal of alien's habeas petition after noting that alien waived his claim of reliance by failing to raise it before the IJ and BIA and noting that alien had pleaded guilty to numerous offenses over the course of several years); *Almon*

---

7. The Second and Fourth Circuits have determined that repeal of § 212(c) relief has an impermissible retroactive effect that is more broad than that found by the court in *Mattis*. Those circuits have held that the retroactive effect reaches *all* pleas of guilty and nolo contendere entered prior to the statute's effective date, regardless of whether the plea was entered in reliance on the possibility of receiving § 212(c) relief. *See St. Cyr*, 229 F.3d at 420; *Tasios*, 204 F.3d at 552.

*v. Reno,* 214 F.3d 45, 47 (1st Cir.2000) (vacating stay and dismissing petition after noting that alien's reliance claim had been waived and that number of convictions made alien's reliance claim "tenuous"); *Groccia,* 234 F.3d at 762 (affirming dismissal of petition after noting that alien had waived his reliance argument by failing to raise it below).

### C. Sousa's Claims of Reliance

The first issue, whether Sousa timely raised the issue of his eligibility to apply for waiver under former INA § 212(c), is relatively straightforward. As evidenced by both the oral decision of the IJ and the written decision on appeal before the BIA, Sousa has timely and consistently argued that he should be eligible to seek discretionary waiver.

The second question, whether Sousa has alleged a colorable claim that he actually and reasonably relied on the existence of § 212(c) waiver at the time he entered his guilty plea, is more complex. As to whether Sousa actually relied on the existence of the waiver provision, Sousa has offered an affidavit, which is corroborated by his uncounseled statements under oath in the hearing before the IJ, stating that the possibility of discretionary waiver was factored into his decision to plead guilty. Sousa testified that the judge told him he was not deportable for this case but could be deported if he committed another crime.

In addition, a brief assay of the standard used in granting or denying § 212(c) relief confirms that Sousa's reliance is arguably reasonable. In considering a waiver request, the IJ weighs favorable considerations against adverse ones. Favorable considerations have been found to include such factors as:

family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives).

*Matter of Marin,* 16 I. & N. Dec. 581, 584–85 (BIA 1978). The factors deemed adverse to the aliens's request include:

the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of [the alien's] bad character or undesirability as a permanent resident of this country.

*Id.* at 584.

Sousa, unlike the petitioners in *Mattis* and *Almon,* has only one conviction on which his deportation order is based. The fact that he has lived here since he was a baby would likely weigh strongly in his favor.[8] Moreover, according to Sousa, he was actually told by the trial court that he would not be deported for this offense during the plea colloquy.

At hearing, the INS argued that Sousa's claims of reliance are facially unreasonable because, at the time of his guilty plea in

---

**8.** Sousa has a young daughter who is a United States citizen. Obviously that could not have been a factor in his decision-making in 1990 but could make a difference now.

1990, Sousa could not have been deported for the unarmed robbery conviction alone. *See* 8 U.S.C § 1251(a)(4) (1988) (superseded) (providing that alien convicted of one "crime involving moral turpitude" is deportable only if such crime is "committed within five years after entry"). However, discretionary waiver was available in 1990. Although Sousa's sole conviction alone did not render him deportable, he may well have relied on the availability of a waiver if the law subsequently changed so that the plea made him subject to removal. In any event, the INS's argument may backfire. The expectation in 1990 was that one conviction did not suffice to trigger removal. This was so settled that a judge apparently advised him of this law at the plea colloquy. A retroactive application in these circumstances raises a colorable and strong claim of a violation of the due process clause of the Fifth Amendment.

Accordingly, Sousa's case must be remanded for determination by the IJ as to whether Sousa actually and reasonably relied on the existence of § 212(c) waiver when he entered his guilty plea in 1990. If the IJ finds the requisite reliance, he must consider Sousa's waiver request under the law as it stood in 1990.

## IV. Arbitrary Delay in Initiating Removal Proceedings (Count II)

With regard to Sousa's second claim of relief, the INS argues that Sousa fails to state a claim by alleging that the INS impermissibly and arbitrarily delayed the initiation of removal proceedings against him in a manner that deprived him of rights he would have enjoyed prior to the passage of AEDPA and IIRIRA. Although Sousa does not affirmatively concede a defect in this claim, he offers no argumentation in his brief in support of it. ■ Sousa's silence on this point is telling of the nearly insurmountable obstacles

confronting his claim. "[T]he Attorney General (and, in turn, the INS, as her designee) has broad discretion in deciding whether and when to pursue deportation against an alien." *Costa v. INS*, 233 F.3d 31, 37 (1st Cir.2000) (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483–85, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)). The Attorney General's discretion in the area of deportation is akin to the her responsibility for enforcing the criminal laws: "in both situations, [s]he has discretion to refrain from instituting proceedings even though grounds for their commencement already exists." *Id.* (quoting *Johns v. Dept. of Justice*, 653 F.2d 884, 889 (5th Cir.1981)). The INS's exercise of discretion as to whether and when to initiate deportation proceedings thus enjoys a strong presumption of validity and good-faith. In order to overcome that presumption, Sousa "must articulate specific allegations of bad faith and, if necessary, produce reasonably particularized evidence of in support of those allegations." *Id.* (quoting *United States v. Gertner*, 65 F.3d 963, 967 (1st Cir.1995)).

Sousa has offered no specific allegations, much less a proffer of particularized evidence, that would indicate an improper exercise of discretion on the part of the INS. This claim must therefore be dismissed.

## V. Postscript

Outgoing INS Commissioner Doris Meissner recently authored a memorandum detailing the scope of INS prosecutorial discretion and recommending certain guidelines for the exercise of that discretion. *See* INS Mem. HQOPP 50/4 (Nov. 17, 2000). In the memorandum, Commissioner Messier states that the agency is "not only authorized by law but expected to exercise discretion in a judicious manner at all stages of the enforcement pro-

cess . . . ." *Id.* at 1. In the favorable exercise of its discretion, the agency may take such actions as declining to issue a notice to appear, cancelling the notice to appear prior to proceedings before the IJ, and moving for dismissal once the proceedings have begun. *See id.* at 6. She states: "Even when an immigration officer has reason to believe that an alien is removable and that there is sufficient evidence to obtain a final order of removal, it may be appropriate to decline to proceed with that case. This is true even when an alien is removable on his or her criminal history and when the alien—if served with [a notice to appeal]—would be subject to mandatory detention." *Id.*

The memorandum details numerous factors that counsel in favor of exercising the discretion not to pursue removal. For instance, it sets forth the alien's length of residence in the country, family ties in country, and lack of ties to the alien's country of origin as all factors against pursuing removal. *See id.* at 7. Where the alien's past criminal conduct is involved, the agency may also consider the seriousness of the offense, the number of offenses, and the time elapsed the since the occurrence of offense in determining whether the favorable exercise of prosecutorial discretion is warranted. *See id.*

Based on the limited record before me, I suggest this may be an appropriate case for review under the new policy which permits the INS to dismiss pending actions based on equitable considerations. On remand, the INS should take a fresh look at the case.

### CONCLUSION AND ORDER

For the reasons stated above, Respondents' motion to dismiss (Docket No. 2) is **DENIED** with respect to Count I and **ALLOWED** with respect to Count II. In addition, Sousa's petition for writ of habe-as corpus (Docket No. 1) is **GRANTED** with the following instructions: this matter will be remanded to the Immigration Judge for consideration, in accordance with this opinion, of Sousa's actual and reasonable reliance on the availability of discretionary relief from deportation under INA § 212(c) as it stood on June 29, 1990, the date of Sousa's guilty plea, and any settled expectations a decade ago which might implicate due process concerns. I further order that Sousa's deportation be stayed pending the resolution of proceedings before the IJ.